The next case we'll hear is the United States v. Douglas and Ms. Lourish. May it please the Court, Lisa Lourish from the Federal Public Defender's Office on behalf of the appellant, Charles Douglas. This appeal is limited to just one special condition of supervised release that the District Court has given to Mr. Douglas following his conviction for violating SORNA, the Sex Offender Registration and Notification Act. The condition at issue is that as part of Mr. Douglas' five years of supervised release, which will commence when he is released from the Bureau of Prisons in just under two months from today, he must submit to a sex offender evaluation. And based on the results of that evaluation, the District Court anticipated his probation officer may want to come back before the District Court to request additional special conditions of supervision for the Court to impose at that time. And there's two issues, as I've briefed for the Court to consider today. The first, procedural. The District Court simply failed to provide any justification for imposing this particular special condition of supervision, instead only explaining why other conditions were not appropriate. The law in the Fourth Circuit is clear. The Court I don't think that's consistent with what I saw on the record. There was quite a discussion about the fact they didn't know enough about him. He'd been out of circulation. He hadn't registered for a while. And the Court, we had the prior conviction and we had some evidence of his approaching a 16-year-old. And it seems to me that all this was discussed and the Court rejected all the standard conditions and said, I want to know more about this one. And I'm going to impose this one not. Isn't that within the discretion of the Court? I would agree that to the extent the District Court made any finding when he said, well, okay, I don't disagree with that, in response to the government's argument, which I believe you just recapped accurately, that we don't know if he's a danger. We don't know anything about this defendant because he, quote, stayed away from detection. I don't think that that is a finding that the Court made because it was just part of the argument. And in other cases, the District Court rejected that same line of reasoning by saying, quote, well, if he kept a low profile, but if he had gotten in criminal trouble, his fingerprints would have gone in, and also stating accurately that the remoteness of the convictions is such that the Court should not assume that the conditions would stand in this case. So I think I agree to the extent there is any reason. The transcripts spend a lot of time on these discussions and the Court says, I agree with that, I agree with this. The whole reason for giving explanations is to see why the Court put this particular condition in. And I think it's pretty clear why the Court did it. And you can argue that it was unnecessary to the level of an abuse, but I don't think there's any question as to why the Court did it. Well, Your Honor, I'm happy to speak ultimately about whether that was a sufficient justification. Well, I do think that the Court's findings on that point were not as clear as the case law would require. But even if the Court did make the findings on the basis that there was just not enough information about this particular defendant, I don't believe that a lack of information, given the other things that we did know about the defendant in this case, is sufficient to justify the special condition of supervision. As a reminder, as the Court well knows, any special condition of supervision has to be both reasonably related to the 3553 sentencing factors, and also not pose a greater deprivation of liberty than is reasonably necessary. And in this case, we have a prior sex offense that's more than two decades old. We have a defendant who actually completed sex offender treatment successfully, and successfully completed two years of supervised probation without any issue. We have a 20-year period of time between his conviction for the failure to register and the underlying sex offense, where there's no other criminal history but for a driving while suspended charge, no other evidence of sexual misconduct. And on that record, I would submit to the Court that none of the cases that have been cited in either of the briefs from any other circuit or this Court have imposed any special condition for an evaluation as the Court did in this case. I think... Well, but I mean, the whole purpose of registering is to be able to keep tabs on somebody who was shown a proclivity to engage in deviant sexual misconduct. And if he's gone for, what was it, 15-plus years, I mean, I think it'd be a closer case if he'd been gone a month or a week, and he then comes back. But 15 years is a long time to be out of circulation, as Judge Niemeyer described it. Why isn't it reasonable to say, hey, you know, I don't know what was going on with this guy, but he certainly kept a low profile, he hasn't been charged or convicted of any sexual offenses, but who knows what he's done in those 15 years? He may have resumed his sexual, criminal sexual behavior. Let's just check and see. Why is that unreasonable? I think it's unreasonable, Your Honor, because basing it on a lack of information would set an inappropriate standard for district courts going forward. In this case, the Court did, as in every sentencing, order a pre-sentence report, where the probation officer interviewed at length the defendant, had the opportunity to ask him about all of his prior residences, all of his prior employment, and in no place in that pre-sentence report did the probation officer suggest that there was any issue with the lack of truthfulness or veracity on the part of the defendant. The probation officer did not note any concerns, and in the specific facts of this case, the investigators, the U.S. Marshal Service, interviewed the people who the defendant had been living with over the last five years prior to his arrest with a failure to register. So for those last five years where he was living was known, all the people he lived with were interviewed, and there were no reports or suggestions of any untoward behavior. So while I agree that there was a long period of time where the defendant was, before he was arrested for the failure to register, we have to ask what would registering have done? It would have told us his address, and that's nothing more. So I don't know that just, I think it would be a mistake to assume that just registering would provide the information the district court felt that it lacked. While the district court did not have a lot of information, it had all the same information the district court would have in sentencing any defendant. Does registering also alert the public to the whereabouts and existence of a sex offender in their midst? It does, but I don't know that that would have provided any additional information about whether or not the defendant was still had any proclivity. Well, I think that's intended, I suspect, to both be a prophylactic, a matter of protecting the public against someone who has previously committed a sexual offense, but also a deterrence of sorts in the sense that the public understands who they have among them. Well, and I would agree that that was a, certainly, that's why he was punished. That's why he's been subject to a period of incarceration. He has another felony conviction for not following the requirements of that statute, which clearly applied to him. But it doesn't suggest, I think, that just the fact that the public where he was living around was not aware that he was a sex offender does not contribute any additional reason to think that this lack of information is sufficient to justify a condition. I think one thing I noted in my – Well, there's a protection aspect. You know, I was looking here when you said the probation officer actually recommended this condition. The probation officer recommended all of the sex offender conditions. Well, I understand, but I thought you said they had a chance to review it all and they couldn't find anything. They said that this is in order to serve to protect the community and assist the rehabilitative effort of the defendants. And in light of his history, and this was a recommendation made by the probation officer, and it looks to me as if with respect to number five, the court said, well, let's see. Let's see if this is going on, because if he continues to be in a condition where the public needs to be protected, the court needs to know that. Well, Your Honor – That really is – it really just carries out the whole purposes of the registration statute. I certainly agree that the probation officer recommended this special condition five. The probation office recommended almost every one of the standard sex offender conditions. My point about the pre-sentence report is that is the mechanism the court uses to find out information about a defendant. And in reviewing – the probation officer reviewing the defendant's employment history, in reviewing where the defendant has lived, and having the opportunity to ask very detailed questions to the defendant, did not note any red flags or concerns about those specific aspects of his background, which I would suggest are the same aspects that registration, had he complied with SORNA, would have told us the information. It provides the same purpose. And I think it's important to keep in mind that this is not just a simple – an evaluation in a sex offender context is not just sitting down and having a conversation with a psychiatrist for 20 minutes. These are very intensive evaluations that subject the people in the situation to making disclosures that can be used against them to either violate the terms of their supervised release – Now, the condition is that he subject himself to an evaluation to bring the court and the probation office up to date, find out what's necessary, and to give latitude to the probation office to adjust if necessary. But it seems to me, Doc, this falls right under Stotts and the broad discretion – standard is an abuse now. The question, is this an abuse for the court to make this kind of condition? Well, first I would say, Your Honor, I think that the invasive nature of the evaluation is relevant because the district court had to consider whether this was the least restrictive means reasonably necessary in light of the facts of the case. I do think that there are other least restrictive means that were available to the court. Just imposing the standard conditions where the defendant would have to, for the next probation officers, inquiries, and be subject to that kind of intensive supervised monitoring if available to the probation officer was available to the district court. As for the abuse of discretion standard, I think you're absolutely correct. That's the standard that we are under today, but I think that just a lack of information is an insufficient basis, and I think that the sentencing commission – The fact that a man has been convicted of a sex offense, that he failed to register, that he didn't report, and that we know nothing about him now, whether he has conducted himself in an innocent manner or not. You're suggesting that because they didn't uncover anything in asking him questions, that therefore it was an abuse of discretion to impose this condition. Well, I would suggest to the court that the sentencing commission's reasoning in 2014, when the sentencing commission revised and amended sentencing guideline 5D1.2 and 5D1.3, which concerned the imposition of supervised release conditions, such as this condition, took great care to separate out failures to register from sex offenses. To say that there is specifically not a link, they reviewed the evidence, expert testimony, and said – What do you suggest is the purpose of Congress's requirement to register as a sex offender? I think that the purpose of registration is to, well, I think in the best case scenario it's to alert the public and so that people know where a sex offender is living. And so I think that's the purpose as I understand it, but I confess I don't have a full grasp of all the legislative history into why it was enacted. But notification requirement alone, I don't see that as a link that would justify the condition. I think the sentencing commission, finding that there was no correlation between SORNA offenses and sex offender recidivism, was careful to separate out failures to register. The only condition that's required in a failure to register case, as you read 5D1.3 and also the statute, is just that you register. As part of your supervised release conditions, you have to continue registering. It certainly could have been the case in 2014 when the commission carefully removed registration offenses out of the definition of sex offenses that could have specified that in every failure to register case, we think you have to at least do an evaluation. But it's also clear that the commission didn't intend to preclude the imposition of that condition under the appropriate circumstance. I certainly agree, but I think that the appropriate test for the district court in a case like this and looking at all the other cases that have been presented in these briefs, would be that a failure to register alone is insufficient, but the court could consider things such as how extensive the defendant's history was for sexual misconduct, whether there was any other criminal activity between the original sex offense and the failure to register. What about the length of the absence or failure to register? Well, I think that that could be a circumstance that the court could fairly consider, along with whether there's other information, such as there was in this case, about where the defendant had been living for the last five years. But I don't disagree that that could potentially be a relevant factor. But I think that the Ninth Circuit case in Johnson is a good one to consider, because in that case, the court looked at whether there was any link between the present offense, in this case, our failure to register, and the prior sex offense. In that case, they found there was a link. It was a possession of a firearm in Johnson. They found that was linked to the defendant's prior sex offenses, because he had used a weapon in committing his two prior sex offenses. And so, therefore, there's a link. A failure to register is a regulatory offense. And so, not keeping up with a regulatory scheme, I would suggest, is unrelated to actually committing sexual misconduct. Of course, they're linked in that the requirement to register naturally follows from the prior sex offense, but the actual conduct being criminalized is very different. So, that's another factor this court could suggest that the district courts must consider in applying their admittedly broad discretion. I see my time is about to expire. So, if there's no additional questions now, I'll save the rest for rebuttal. Thank you. All right, Ms. Healy. Good morning, and may it please the court. Nancy Healy on behalf of the government. I think this court has been picking up on some of the broad tenets when it comes to what is a reasonable condition to be placed on someone who committed a remote sex offense. The court, of course, has very broad discretion in imposing special conditions, as long as they're reasonably necessary or reasonably related to the conditions or the statutory factors, the relevant statutory factors. And as long as it's not a greater deprivation of liberty than is necessary. And as this court has honed in on, this is sort of an extreme failure to register case. The offenses occurred in the 90s, obviously. The conviction occurred in 1994, and within eight years of his conviction, he absconded from his requirement that he register as a sex offender. I know this court was asking, you know, why do we have SORNA? If you look at the whole SORNA statute, it starts with a preamble that talks about all the various cases where sex offenders recidivated in horrible ways. So Congress sought to basically stop the patchwork type of laws that were out there and to make sure that they had a system to adequately track sex offenders' movements. And besides having addresses or where someone resides, it has other information as well. So it has information about where someone is employed, where someone is a student. It has various other identifying factors. Defendants generally have to go in and register in person at some point as well. You have to give fingerprints. You have to give a photograph. And as this court has pointed out, of course, then this can go into a system where people can actually search by neighborhood. Who is in their neighborhood? Who is a sex offender? But this particular defendant, Mr. Douglas, chose to just run away, change his name. He was indicted in, I believe it was Kentucky, under the name Chris Davis or an A.K.A. of Chris Davis. He used jobs where he didn't have to show any type of identification. He didn't have papers. And while Ms. Flores points out that there were interviews of people in the last five years, presumably a lot of the interviews were also to figure out where he's been and what he's been doing in the last few years, five years is only a portion of that almost 15-year period of time. So we really don't know any information about what Mr. Douglas was doing. And that is a concern. I also think that's a distinguishing factor in this case. If you look at the cases, and I know, Judge Diaz, I think you were on some of the cases that, of course, were cited in this case, including the Worley case, which came out of my district, and Rogers as well, and Judge Traxler, I think you were on one of the cases on Dotson as well. But a lot of those cases talked about a situation where we're dealing with a present offense that was neither a SORNA offense nor a sex offense. And I think SORNA is in one of those interesting areas. It isn't a sex offense under the guidelines, but it's still subject to enhanced supervision under the statute. So the mandatory minimum for supervised release is five years, and you can technically get up to lifetime supervision on a SORNA conviction. I think the other thing that's relevant, too, is the law has already made a determination that Mr. Douglas has to register for life. There's a reason for that. There's a reason to make sure that we can keep track of an offender like Mr. Douglas. And every sentencing court, when they sentence a defendant, has to make a dangerousness determination. And without the information or valid information or adequate information to make that determination, I think what Judge Moon did in this case was perfectly reasonable and certainly within his broad discretion in terms of trying to find out what more can we know and to decide whether there were reasons to impose other sex offender conditions. Would that be enough in every case? What more can we find out? I mean, what were the specific factual findings in this case that supported the imposition of the condition? Well, I think the judge accepted the government's position that because of Mr. Douglas's own actions, his intentional action to abdicate his responsibility and acknowledged he knew he had an obligation to register, but didn't do it. He acknowledged the government's statement that because of his actions, we don't know anything about him. We don't know what he's been doing in 15 years. Can I say he's done anything during that time? No, and I never said that during the sentencing. But I think the fact that he is flaunting the law and I think the fact that some of the cases that talk about SORNA violations state that a SORNA violation can be an indicator that someone has a higher risk of recidivating, I think that is relevant. SORNA is not like a regular other offense. It's not a felon in possession offense. It's not a fraud case. It's something that's a pretty simple requirement. You have to register. I think a lot of the registrations, including Virginia, allow you to mail in a registration at times. But it shows that he was willing to flaunt the law, and that would suggest that he's a risk to recidivate. I know Ms. Lorsch in her brief also suggested the non-payment of child support as a reason, but that's not an otherwise law-abiding life. The man is avoiding all of his legal responsibilities. Who's to know what he was doing before? We know, and I know there was discussion during the sentencing hearing, that there is a serious recidivism risk. This is not a crime against an adult, and I think the cases make clear that crimes against children are more aggravated in many ways than sex crimes against adults, which are bad enough. We know that those crimes are committed in the privacy of one's home, and just because there may not have been statements to the Marshal Service to suggest that any of the people he lived with for the last few years noticed anything that he had done doesn't mean that he didn't do anything. They weren't unnoticed that this guy was a sex offender. Ms. Seeley, can I ask you a question? Yes, I'm sorry. Will the evaluation give us any insight into why he's not registering? Well, that's a good question. I don't know whether they'd ask that, I guess. The court ordered an evaluation by an appropriate mental health provider who specializes or has certain information or background and training in how to do sex offender evaluations. It might. Certainly, I think the most important thing is to find out whether he still has an interest in children, which I think is why the court ordered this particular evaluation, to make sure he wasn't a recidivism risk, because we do know that the statistics say that these types of offenders are recidivism risks. Okay. Thank you. I don't know if that answered your question, but I don't know whether it would say or how detailed they would get into saying why didn't you register, but I think he did say at the time of his arrest that he knew he had an obligation to register. He didn't register. He also added the child support obligations, but he also knew he had a registration. Ms. Seeley, Ms. Loris talked about the fact that this isn't your typical evaluation, that it's fairly intrusive, invasive, and that the district court didn't really give any considerations to something short of that. What is your response to that? You know, it's a good point. For sort of the same reasons that Ms. Loris said that the probation officer could have asked questions about a sexual history, and I wasn't there during his interview, so I don't know whether they did. And one of the reasons that the law has developed to allow certain types of tests that might not be just verbal tests is because we know that self-report by sex offenders is grossly inadequate. And we do know that there's, of course, studies out there that show that when you put some type of other test, like a polygraph on someone who has said, no, I haven't committed a crime, admitting what they've done in the past, we often find that their answers have been deceptive, and that has led to disclosure. So, yes, most sex offender evaluations, if you want it to be an adequate and sufficient sex offender evaluation, will have additional types of tests that will be a safeguard to make sure that the self-report is reliable or not. I do think the Dodson case approved the use of both polygraph and the plethysmograph, the PPG, as being important tools to ensure basically, you know, presumably to ensure the veracity of any information that is given verbally. So, yes, they are more invasive than just a simple interview. I don't think there was any discussion at the sentencing and hearing itself to discuss whether those particular tests would be employed, but presumably something other than a straight interview could be employed, and I think they're reasonable. It's still an evaluation. It's still less of a deprivation of liberty than saying, okay, you have to get a sex offender treatment every month or for the next however many years that you're on supervised release. Any further? If there's no questions or no further questions from this Court, I will rely on my brief. Thank you. Ms. Lorsch? I think it's important for the Court to consider that the reasoning provided by the government and the argument that's under consideration now to justify the evaluation condition, things like we know that sex offenders have a higher chance of recidivism, that self-report is often inadequate, that these kinds of crimes often go unreported, would justify an evaluation condition in every case where someone has a prior sex offense. And we know from the prior case law in this circuit and in other circuits that that shouldn't be enough on its own. So the real question for the Court is whether there's something inherent to a failure to register that suggests some higher level of concern. And I suggest, and rest on the briefs at this point, that there is nothing in particular about a failure to register that causes any greater concern by failing to... I think the Court and the government in the sentencing hearing were concerned by the fact that it wasn't just a simple failure to register. It was an evasion of the right to register, including change of name, moving locations, and he tried to give an explanation, but maybe it's true, but maybe it's not. Maybe it's a cover. But we have somebody who was a child sex abuser and who maybe could be a recidivist or not. We don't know. But I think it's the length of time and the evasion, the extreme failure to report that the Court relied on below to say, let's find out, let's conduct an evaluation and not just accept some of the fact that this is a child support case or whatever. And I can't see how, when you get back to the question I have originally is how this is an abuse. This was a judgment call the Court made. The Court clearly rejected all the recommended conditions, went down them, and in particular focused on five because of the discussion that the Court had. And so we have to conclude the Court just abused its discretion in doing that. And in this context, that's a difficult hurdle. Well, Your Honor, with respect to the length of time that the defendant had failed to register, I think it is worth the Court's considering, as was argued to the District Court, that when the defendant committed his underlying sex offense, there was no registration scheme in place, not even in Virginia, let alone the SORNA registration scheme. And the last time that he registered, the facts show, was prior to SORNA ever being enacted. And no arguments were made in this case that he was not subject to SORNA. He completely admitted that at some point he became aware he needed to register and that he hadn't complied. So that was not an issue below. But with respect to the length of time he had failed to register, I think it could be argued in the reverse, that the fact that he managed to live an otherwise law-abiding life for 15 years. We don't know that. That's the big problem, that since his conviction, there has been a lot of learning, there have been a lot of studies. Congress has acted, and Congress has acted specifically with respect to SORNA and the sex offenders. We recognize that there's a higher level of recidivism, that the reporting was, and the control of the recidivism activity was hard because of the fragmented statutes across the country. And there's a reason for all of this. And I don't think having this man with this kind of history simply subject himself to an evaluation to find out whether he was law-abiding, he is fine, there are no further restrictions needed, that may turn out to be the case. But to have the court inquire to find out whether that's necessary seems to me to be a precaution that's within the scope of what the court could have decided, unless I'm missing something. Well, I think we have a disagreement about the impact of a failure to register. And I think that I agree with the district court statement in the sentencing that had he done some unlawful act, his fingerprints are the same no matter what name he's using. And so a fingerprint check at any arrest would have alerted the marshals to where he was and also confirmed that he had committed some other criminal act. So if there's no further questions from the court, thank you. Thank you, Ms. Lorsch. We'll come down and pre-counsel and proceed on to the last case. Thank you.
judges: Paul V. Niemeyer, William B. Traxler, Jr., Albert Diaz